# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WILLIAM JOHNSON,

               Petitioner,                  Case Number: 2:06-CV-11214

v.                                      HON. BERNARD A. FRIEDMAN

JERI-ANN SHERRY,

               Respondent.

_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

Petitioner William Johnson, through counsel, has filed a petition for a writ of habeas

corpus. Petitioner is currently incarcerated at the Chippewa Correctional Facility in Kincheloe,

Michigan, pursuant to convictions for second-degree murder, three counts of assault with intent

to commit murder, and possession of a firearm during the commission of a felony. For the

reasons set forth below, the Court denies the petition.

### II. Background

Petitioner's convictions arise from events that occurred outside a BHA Hall in

Hamtramck, Michigan. The Michigan Court of Appeals summarized the facts as adduced at

Petitioner's trial as follows:

> Defendant's convictions arise from the fatal shooting of Carlos Davis and non-
> fatal shooting assaults of James Mathis, Larry Lewis and Robert Richards outside
> a dance hall in Hamtramck on March 3, 2002. The shootings occurred after the
> victims and several other persons left the hall after a large brawl broke out among
> partygoers. Only two persons, Robert Richards and Damon Ramsuer, reported
> seeing the shooter.

Richards told police that he saw the shooter, and he gave a detailed description of [the shooter's] clothing. The police obtained photographs taken by a hired photographer before the fight broke out, and showed the photographs to Richards, who identified defendant as the shooter from one of these photographs. Richards identified defendant at the preliminary examination, but Richards was killed before defendant's trial. His preliminary examination testimony was read at trial.

The police also interviewed Ramsuer, who signed a statement declaring that he saw the shooter. Ramsuer also identified defendant from the party photographs. Ramsuer failed to appear for the preliminary examination. When he testified at trial, he denied seeing the shooter, denied telling police that he saw the shooter, and denied making an identification. The prosecutor impeached him with the signed statement, and with the testimony of the officer who took the statement.

Johnson, slip op. at 1.

### III. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder, three counts of assault with intent to murder, and possession of a firearm during the commission of a felony. On February 13, 2003, Petitioner was sentenced to 35-60 years imprisonment for the murder conviction, 20-40 years imprisonment for each of the assault convictions, all to be served concurrently with one another and consecutively to two years imprisonment for the felony-firearm conviction.

Petitioner filed a motion for a new trial and for an evidentiary hearing. He requested an evidentiary hearing regarding his claims that he was denied his right to a public trial and that he was denied the effective assistance of counsel. The trial court denied Petitioner's motions. People v. Johnson, No. 02-012133-01 (Wayne County Circuit Court Sept. 30, 2003).

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I. Where the court excluded the public including Appellant's family from the courtroom while three witnesses testified, was Appellant's constitutional right to a

2

public trial violated?

II.     Did prosecutorial misconduct deny due process of law in the following ways:

    a.     The prosecutor's arguments denigrated defense counsel before the jury, thus diluting the presumption of innocence. The argument acted as a comment on his right to counsel, the right to the effective assistance of counsel, and the right to present a defense;

    b.     The prosecution's strategy introducing and arguing the element of fear before the jury constituted prosecutorial misconduct and denied Appellant a fair trial and due process of law; and

    c.     The prosecutor commented on the defendant's exercise of his right to remain silent and right not to testify and he shifted the burden of proof?

III.    Was Appellant denied a fair trial when the trial judge told the jury over objection that the prosecution's only eyewitness was unavailable because he was deceased?

IV.    Was Appellant denied the effective assistance of counsel in the following ways:

    a.     Defense counsel failed to object to the closing of the courtroom to the public;

    b.     Defense counsel's decision to call Janard Thomas and Letrulia Johnson as witnesses was an unreasonable strategy;

    c.     Defense counsel opened the door to testimony on fear;

    d.     Defense counsel failed to object to prosecutorial misconduct; and

    e.     Defense counsel failed to call an eyewitness whose testimony would have been exculpatory?

V.     Did the trial court err in failing to hold a hearing on whether the out-of-court identification and the in-court identification were the result of an impermissibly suggestive procedure, where a group shot from the party was displayed to the eyewitness and the only person in the photo whose clothing matched the description of the perpetrator was the Appellant. Was Appellant also denied his right to counsel where the investigation had focused on but an attorney was not present at the identification procedure?

VI.    Was Appellant denied due process of law and his right to a proportionate sentence where the court erred in the scoring of the guidelines and erred in its decision to

exceed the guidelines?

The Court of Appeals granted Petitioner's motion to file a supplemental brief, adding the following additional claim:

> VII.   Did the sentence imposed by the court violate Appellant's right to trial by jury, the right to due process of law, and the right to be free from excessive punishment?

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. <u>People v. Johnson</u>, No. 247227 (Mich. Ct. App. Aug. 24, 2004). Petitioner filed a motion for reconsideration on the ground that the trial court failed to address the issue raised in his supplemental brief. The court of appeals denied the motion for reconsideration. <u>People v. Johnson</u>, No. 247227 (Mich. Ct. App. Sept. 30, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised before the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." <u>People v. Johnson</u>, No. 127293 (Mich. May 31, 2005).

Petitioner, through counsel, then filed the pending petition for a writ of habeas corpus, raising the following claims:

> I.   Where the court excluded the public including Petitioner's family from the courtroom while three prosecution witnesses testified, was Petitioner's constitutional right to a public trial violated?

> II.   Did prosecutorial misconduct deny Petitioner due process of law in the following ways:

>> a.   The prosecution's strategy introducing and arguing the element of fear of the defendant was fundamentally unfair;

>> b.   The prosecution's argument denigrated defense counsel before the jury thus diluting the presumption of innocence. The argument acted as a comment on his right to counsel, the right to the effective assistance, and

4

the right to present a defense;

    c.    The prosecutor commented on the defendant's exercise of his right to remain silent and right not to testify and he shifted the burden of proof?

III.    Was Petitioner's right to a fair trial denied when the trial judge told the jury over objection that the prosecution's only eyewitness was unavailable because he was deceased?

IV.    Was Petitioner denied the effective assistance of counsel in the following ways:

    a.    Defense counsel failed to object to the closing of the courtroom to the public;

    b.    Defense counsel's decision to call Janard Thomas and Letrulia Johnson as witnesses was an unreasonable strategy;

    c.    Defense counsel opened the door for testimony on fear;

    d.    Defense counsel failed to object to prosecutorial misconduct; and

    e.    Trial counsel failed to call an eyewitness whose testimony would have been exculpatory?

V.    Did the trial court err in failing to hold a hearing on whether the out-of-court identification and the in-court identification were the result of an impermissibly suggestive procedure where a group photo taken at the party was displayed to the eyewitness and the only person in that photo whose clothing matched the description of the perpetrator was the Petitioner? Was Petitioner also denied his right to counsel where the investigation had focused on Petitioner but an attorney was not present at the identification procedure?

VI.    Was Petitioner denied due process of law and was his right to a jury trial denied where his sentence was based on guideline factors not found by a jury to have been proven beyond a reasonable doubt?

## IV.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must

utilize when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

    (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; see also Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 120 S. Ct. 1495, 1519-20 (2000).

---

[1]     28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 1521. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .

> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 1521-22.

## V. Analysis

### A. Right to a Public Trial

Petitioner argues that his Sixth Amendment right to a public trial was violated when the trial court closed the courtroom to the public during the testimony of three prosecution witnesses. The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The right is applicable to the states through the Fourteenth Amendment. Duncan v. Louisiana, 391 U.S. 145, 148-49 (1968).

"The central aim of a criminal proceeding must be to try the accused fairly." Waller v. Georgia, 467 U.S. 39, 46 (1984). The public-trial guarantee was created to further that aim. Id., citing Gannett Co. V. DePasquale, 443 U.S. 368, 380 (1979). A public trial helps to ensure that

judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury.  Id.  The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless error analysis.  Id. at 49-50, n.9.

A closure does not violate the Sixth Amendment where: (1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced by an open courtroom; (2) the party seeking closure demonstrates that the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure.  Id. at 48.

Respondent argues that this claim is procedurally defaulted.  The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict.  United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent."  Rust, 17 F.3d at 162;

Murray v. Carrier, 477 U.S. 478, 496 (1986).

A state procedural default is not an "independent and adequate state ground" barring subsequent federal review unless the state rule was "firmly established and regularly followed" at the time it was applied. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. Coleman, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." Simpson, 94 F.3d at 202.

If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. Rust, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

This Court begins its analysis of whether Petitioner's claim is procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claim. See Coleman, 501 U.S. at 729-30. The last state court to issue a reasoned opinion addressing the allegedly procedurally defaulted claim was the Michigan Court of Appeals. The state court of appeals

held that because defense counsel did not object to the exclusion of spectators, the issue was not preserved for review.  Johnson, slip op. at 2.

Petitioner argues that the state court of appeals' reliance on the contemporaneous-objection rule should not serve to default his claim because, at the time of Petitioner's trial, Michigan courts regularly addressed the merits of a claim on appellate review if the claim involved a "significant constitutional question."  *See* Petitioner's Reply Brief at p. 3.

This Court recently addressed a similar claim of procedural default in the context of a claimed violation of the right to a public trial and held:

> While the contemporaneous objection rule is fairly established as a preferred procedure and appears to be regularly followed as to some claims, Michigan courts regularly waived contemporaneous objection defaults at the time of Petitioner's conviction when the issue was perceived to concern "constitutional due process rights."  *See, e.g.,* People v. Crear, 242 Mich. App. 158, 166 (Mich. Ct. App.  2000); *see also* People v. Wilson, 230 Mich. App. 590, 593; People v. Johnson, 215 Mich. App. 658, 669 (Mich. Ct. App. 1996); Watson v. Watson, 204 Mich. App. 318, 319 (Mich. Ct. App. 1994).  State procedural requirements which are not regularly followed cannot prevent federal review of alleged constitutional violations.  Barr v. City of Columbia, 378 U.S. 146, 148 (1964).  *Accord* James v. Kentucky, 466 U.S. 341, 348-49 (1984).  "A rule of exception which itself depends on the perceived merits of the federal claim cannot fairly be considered 'adequate and independent' of federal law so as to preclude federal habeas review."  Griffin v. Berghuis, 298 F. Supp. 2d 663, 672 (E.D. Mich. 2004), *quoting* Bentley, 239 F. Supp. at 694.
>
> Petitioner's claim that her right to a public trial was violated unquestionably presented a significant constitutional question.  Michigan courts regularly waived contemporaneous objection defaults in such circumstances.  Accordingly, the Court finds that the state court's decision not to address this claim was not based upon a "firmly established and regularly followed" state procedural rule and, therefore, that the claim is not procedurally defaulted.  Ford, 498 U.S. at 423-24.  *Cf.* Walton v. Briley, 361 F.3d 431, 434 (7th Cir. 2004) (holding that habeas petitioner had not waived right to a public trial by failing to object at trial because a right to a public trial is a fundamental trial right which may be relinquished only upon a showing that defendant knowingly and voluntarily waived such a right).

Salem v. Yukins, 414 F. Supp. 2d 687, 696-697 (E.D. Mich. 2006).

While the circumstances here are similar to those present in <u>Salem</u>, there is an important distinction between the two cases. In <u>Salem</u>, defense counsel clearly objected to the courtroom closure, but the state court held that her objection was not adequate to preserve the issue for appellate review. Thus, in <u>Salem</u>, whether or not defense counsel's objection was considered adequate to preserve the issue, there was no question that counsel did not acquiesce to the courtroom closure. Therefore, she did not waive the issue.

In contrast, in this case, Respondent's procedural default argument is not based upon defendant's failure to object, it is based upon his consent, through counsel, to the courtroom closure. Respondent argues that this acquiescence constituted a waiver of this claim. The Court finds that Petitioner waived his right to a public trial by his acquiescence, through his attorney, to the closure.

Moreover, even if this issue were not waived, Petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of <u>Waller</u>. The state court, although finding that the claim was not preserved for appellate review, proceeded to address the merits of the claim for plain error. The state court applied the four requirements for courtroom closure articulated in <u>Waller</u>, and held, in pertinent part:

> Here, the record discloses that these four requirements were satisfied. The prosecutor showed that there was an overriding interest because three key witnesses, including two complainants, were justifiably afraid to testify because two other witnesses had been killed under suspicious circumstances. <u>See</u> <u>Nieto v. Sullivan</u>, 879 F.2d 743, 753 (10th Cir. 1989). The closure was not broader than necessary to protect these witnesses' safety, and defendant did not propose an alternative means of protecting their safety. And, though the trial court did not specifically articulate findings in support of the closure, it is apparent form the record that the trial court's decision was based on the suspicious deaths of Richards and Robinson. Defendant's contention on appeal that closure was not permitted because the witnesses were not of tender years and there was no evidence of threats is unpersuasive; nothing in <u>Kline</u> restricts courtroom closures

> to circumstances involving very young witnesses or direct threats. We are
> satisfied that he suspicious deaths of two other witnesses were sufficient to jury
> concerns for the witnesses' safety.

Johnson, slip op. at 3.

The Court finds that the state court's conclusion was a reasonable application of Waller. While the trial court's findings could have been more clearly articulated on the record, it was, as observed by the Michigan Court of Appeals, a reasonable conclusion that the suspicious deaths of two witnesses had, in the trial court's opinion, sparked enough fear in three witnesses and sufficiently placed their well-being at risk to override Petitioner's right to a public trial. The trial court limited the closure to just three witnesses and ensured that the closure would not be evident to the jury. Considering these circumstances, the Court finds that the state court's application of the Waller factors was not unreasonable.

## B. Alleged Prosecutorial Misconduct

Petitioner alleges that the prosecutor engaged in several acts of misconduct. Specifically, Petitioner argues that the prosecutor: (i) introduced the element of fear at the trial; (ii) denigrated defense and defense counsel; and (iii) commented on Petitioner's exercise of his right to remain silent, his right not to testify, and shifted the burden of proof to Petitioner.

Respondent argues that this claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003), *citing* Lambrix v. Singletary, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." Lambrix, 520 U.S.

at 525, 117 S. Ct. at 1523.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's prosecutorial misconduct claims.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."  Caldwell v. Russell, 181 F.3d 731, 736 (6th Cir. 1999).  The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances."  Angel v. Overberg, 682 F.2d 605 (6th Cir. 1982).  The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'"  Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997), (quoting Serra v. Michigan Department of Corrections, 4 F.3d 1348, 1355 (6th Cir. 1993)).

## 1.

In his first prosecutorial misconduct claim, Petitioner argues that the prosecutor improperly introduced the element of fear into the trial by his treatment of three prosecution witnesses: Robert Richards, Damon Ramsuer, and Larry Lewis.  Robert Richards was the only witness who identified Petitioner as the shooter.  Ramsuer identified Petitioner to police, but later denied having done so.

Richards testified at the preliminary examination, but was killed shortly thereafter. Before his preliminary examination testimony was read to the jury, the trial court informed the jury that "Mr. Richards is now deceased.  You are instructed to make no inferences or draw any conclusion from that circumstance."  Tr., Vol. II, p. 138.  In his opening statement, the prosecutor stated: "Mr. Richards is not available to testify.  The court will tell you the circumstances surrounding that."  Tr. Vol. I, p. 156.  Also, during rebuttal closing argument, the

prosecutor addressed the issue of why Richards waited two days before contacting police. The prosecutor stated: "We'll never know why he didn't call the police for two days, because he's not here to tell us why." Tr., Vol. III, p. 263.

The Michigan Court of Appeals, in reviewing this claim for plain error, held that the prosecutor's reference to Richards did not suggest to the jurors that Richards died under suspicious circumstances, and, therefore, did not inject the element of fear into the trial. This Court agrees with the state court's assessment.

At trial, a police detective testified that Ramsuer identified Petitioner as the shooter from a photograph taken at the party. At trial, Ramsuer denied making the identification. Petitioner objects to the prosecutor's following statements regarding witness Damon Ramsuer:

> Keep in mind, will you, what else he said; how he didn't want to be here; how he refused to come to the preliminary exam to testify; how he refused to come to court; how he had to be locked up and arrested and held overnight to testify for his friend after he picked out Mr. Johnson as the shooter.

Tr., Vol. III, p. 217.

> He doesn't identify Mr. Williams here in court. He identified him back in May. But now he's not doing it. Think about why he wouldn't do that in court. Think about the reasons why we had to lock him up to bring him to court to tell on his own friend, Mr. Davis, how he was murdered. Think about these reasons when you weight the credibility . . .

Id. at 266.

Ramsuer's reluctance to testify became the subject of re-cross-examination after defense counsel opened the door to such testimony by asking Ramsuer the following question: "[I]f you had seen who fired shots that might have killed Carlos Davis, there's no reason for you not to have said that, was there?" Tr., Vol. II, p. 97. Given that defense counsel opened the door to this testimony and given the dramatic change in Ramsuer's testimony, it was fair for the

prosecutor to ask the jury to consider Ramsuer's motives for testifying. As the trial court judge noted, both sides were faced with the difficult task of exploring witnesses' credibility and motives for testifying without eliciting testimony that witnesses were fearful of testifying based upon the death of Richards. This Court finds that the prosecutor's arguments regarding Ramsuer's testimony carefully avoided reference to fear.

Finally, Petitioner objects to the prosecutor's statement in closing argument that Larry Lewis was fearful about what happened to him the night of the shooting. Lewis testified that he continued to suffer mental pain from the shooting and continued to relive the night. The prosecutor's argument was a fair interpretation of Lewis' testimony and did not invoke any fear.

In sum, the prosecutor's statements, contrary to Petitioner's claims, were not extensive. They also do not represent a "flagrant and deliberate attempt to mislead they jury by directing them toward an emotional response." Petitioner's Brief at p. 18.

## 2.

Second, Petitioner argues that the prosecutor denigrated defense counsel thereby diluting the presumption of innocence. Petitioner also argues that the act of denigrating defense counsel served as a comment on Petitioner's exercise of his right to counsel and right to present a defense.

Petitioner argues that the prosecutor denigrated defense counsel by eliciting testimony from all defense witnesses that none of them knew they were going to be witnesses until after speaking to defense counsel. Then, in closing argument, the prosecutor stated that the defense witnesses did not talk to the police. They spoke only to defense counsel.

The Sixth Circuit Court of Appeals has held that a prosecutor has a right to cross-

examine a defense witness regarding the witness's delay in coming forward.  <u>U.S. v. Aguwa,</u> 123

F.3d 418, 420 (6th Cir. 1997).  Such questioning is a permissible attack on a witness's

credibility.  <u>Id.</u>

In addition, the prosecutor's isolated reference to "Mr. Fishman's witnesses" is

insufficient to rise to the level of prosecutorial misconduct.  It was an isolated statement and did

not compromise the fairness of the trial.

**3.**

Finally, Petitioner argues that the prosecutor commented on Petitioner's exercise of his

right to remain silent and not to testify and shifted the burden of proof.

First, Petitioner points to the prosecution's cross-examination of defense witness Janard

Thomas.  Thomas testified that he was hit on the head with a bottle while at the party, and that

his cousin, Petitioner, saw him get struck on the head.  The prosecutor asked whether Thomas

ever asked police to prosecute the person who struck him, asked Petitioner to inform police who

hit him, or told police Petitioner could identify the person who struck him.

A defendant's Fifth Amendment right against self-incrimination protects him from the

prosecution's using the exercise of his right to silence after to his detriment at trial, unless it is

used for the limited purpose of impeachment.  <u>Gall v. Parker</u>, 231 F.3d 265, 311 (6th Cir. 2001),

*citing* <u>Doyle v. Ohio</u>, 426 U.S. 610, 618 (1976).  The Sixth Circuit Court of Appeals has held

that:

> While direct comments about a decision to remain silent or not to testify are
> clearly prohibited, indirect comments require a more probing analysis. . . . Such
> comments warrant reversal only when they are "manifestly intended by the
> prosecutor as a comment on the defendant's failure to testify or were of such a
> character that the jury would naturally and reasonably take them to be comments
> on the failure to the accused to testify."  <u>Bagby v. Sowders</u>, 894 F.2d 792, 797-98

(6th Cir. 1990). A court should not find manifest intent from such comments if some other explanation for the prosecutor's remarks is equally plausible. . . . This occurs, for instance, when the comment is a "fair response to a claim made by defendant or his counsel." <u>United States v. Robinson</u>, 485 U.S. 25, 32 (1988).

<u>Id.</u> (internal citations omitted).

The cross-examination of Thomas focused upon Thomas's failure to contact police or desire to prosecute the person who assaulted him. While there is a brief and limited reference to the possibility of Petitioner talking with police, when read in context, it is equally plausible that the question was a comment on Thomas's credibility and not on Petitioner's lack of contact with police. Therefore, the prosecutor's cross-examination was not an improper comment on Petitioner's right to remain silent.

Petitioner apparently argues that the reference to "uncontroverted" testimony in his closing argument was a reference to Petitioner's failure to testify and refute the testimony. The Court finds that the prosecutor's reference to uncontroverted testimony was not a reference to Petitioner's failure to take the stand. It was simply the prosecutor's characterization of the strength of the evidence presented and the defense's failure to present witnesses who effectively countered the prosecutions' witnesses. *See* <u>Shaffer v. Boone</u>, 3 Fed. Appx. 675, 684 (10th Cir. 2001) (holding that jury would not interpret prosecutor's reference to uncontroverted testimony to be a comment on defendant's failure to testify; instead, jury likely would view it as a comment on the strength of the evidence against defendant).

In addition, Petitioner argues that the prosecutor's argument that there is no explanation for why a loaded clip was found in Petitioner's house improperly shifted the burden of proof to Petitioner and commented on his failure to testify. The Court finds that the argument simply asked the jury to make a reasonable inference based upon the evidence presented and was not a

comment on Petitioner's decision not to testify.

### C.  Trial Judge's Statement to Jury Regarding Missing Witness

Petitioner argues that his right to due process was violated when the trial court informed

the jury that the prosecution's only eyewitness was unavailable because he was deceased.

Petitioner maintains that this information, coupled with Larry Lewis's testimony, served to invite

speculation by the jury as to the cause of the witness's death which would cause the jury to be

fearful.

Larry Lewis, a witness injured in the shooting, testified as follows, in response to a

question regarding whether he still suffers pain or injuries as a result of being shot:

> Just mental pain to continue to relive this night over and over again for no reason
> at all.  I don't even know why they shot me, why it even started.  I never knew
> none of these people, but I just know my friends are dead.

Tr., Vol. II., p 54-55.

The Michigan Court of Appeals held that the trial court's instruction did not prejudice

Petitioner:

> When the trial court informed the jury that Richards was deceased, it also
> instructed the jurors "to make no inferences or draw any conclusions from that
> circumstance."  Jurors are presumed to understand and follow the trial court's
> instructions.  People v. Graves, 458 Mich. 476, 486; 581 N.W.2d 229 (1998).
> Moreover, the trial court's use of the innocuous term "deceased" in reference to
> Richards was not calculated to convey that his death was attributable to a
> homicide, or that it was connected to defendant.  The statement did not allow the
> jury to infer that Richards likely was murdered, or that defendant was involved in
> his death.  Similarly, Lewis' comment about his friends being dead was too
> fleeting and vague to be deemed prejudicial to defendant.

Johnson, slip op. at 6.

The Court finds that the state court's resolution of this claim was not contrary to or an

unreasonable application fo Supreme Court precedent.

### D.  Alleged Ineffective Assistance of Counsel

Petitioner argues that his trial attorney was ineffective in the following ways: (i) failed to object to the closing of the courtroom to the public, (ii) erred in called witnesses Janard Thomas and Letrulia Johnson; (iii) opened the door for testimony on fear; (iv) failed to object to prosecutorial misconduct; and (v) failed to call an exculpatory eyewitness.

As an initial matter, Petitioner requests an evidentiary hearing on his claims of ineffective assistance of counsel.  Petitioner appears to have been diligent in seeking an evidentiary hearing in state court.  He filed a request for an evidentiary hearing in state court, which was denied.  He also sought remand for an evidentiary hearing in both state appellate courts.  Both state appellate courts denied his request for an evidentiary hearing.  Even when a petitioner is diligent in requesting an evidentiary hearing, however, a federal court on habeas review is required to hold a hearing "only if the petitioner can demonstrate that (1) the grounds he alleges are sufficient to secure his release from custody, (2) relevant facts are in dispute, and (3) the state court did not provide a full and fair evidentiary hearing." Washington v. Renico, 455 F.3d 722, 731 n.4 (6th Cir. 2006).  As discussed below, none of Petitioner's claims allege grounds sufficient to secure his release from custody.  Accordingly, the Court finds an evidentiary hearing unnecessary.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." Id. at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment." Id. at 687. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" Tinsley v. Million, 399 F.3d 796, 802 (6th Cir. 2005), *quoting* Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

**1.**

First, Petitioner alleges that his attorney was ineffective in failing to object to the closing of the courtroom to the public for the testimony of three witnesses. The Michigan Court of Appeals held that, because the closure of the courtroom was justified under the circumstances, counsel was not ineffective in failing to object to the closure. Johnson, slip op. at 7. As discussed above, this Court held that the decision to close the courtroom for a limited time was not an unreasonable application of Waller. Therefore, the Court finds that Petitioner has failed to establish that the failure to object to the closure fell "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 689.

**2.**

Petitioner argues that defense counsel erred in calling witnesses Janard Thomas and Letrulia Johnson because both witnesses provided damaging testimony. Both Thomas and Johnson testified that they observed Petitioner get hit in the back with a chair. Petitioner argues that this testimony ascribed a motive to Petitioner for the shooting.

The Michigan Court of Appeals held that counsel was not ineffective in calling these witnesses. The court observed that the testimony provided only "negligible" evidence of motive

and that their testimony provided some evidence favorable to the defense.  <u>Johnson</u>, slip op. at 7.

The Court has reviewed Thomas's and Letrulia Johnson's testimony and finds that both witnesses gave exculpatory testimony.  For example, Thomas testified that he and Petitioner helped each other from the club.  Thomas was bleeding from a head wound.  Petitioner drove him to Thomas's mother's home for help.  Thomas testified that Petitioner was with him the entire time and that they left the scene before any gunshots were fired.  Therefore, it was reasonable trial strategy for counsel to present a witness who testified that Petitioner was not the shooter.

Letrulia Johnson testified that she was at the club on the night of the shooting. When the fighting broke out, she and a female cousin headed to the door.  She observed Petitioner, who is her cousin, being hit in the back with a chair and Thomas being hit on the head with a bottle. Letrulia Johnson and her female cousin then exited the building and walked to a vehicle.  As they were trying to open the vehicle, they heard gunshots.  Johnson's testimony corroborated Thomas's and was, therefore, useful for that purpose.  The Michigan Court of Appeals' decision that trial counsel's decision to call Johnson and Thomas was not ineffective assistance is not contrary to or an unreasonable application of <u>Strickland</u>.

**3.**

Petitioner argues that his attorney was ineffective when he opened the door to testimony regarding a witness Damon Ramsuer's fear of testifying.  As discussed in section V.B.1 above, Ramsuer's reluctance to testify became the subject of re-cross-examination after defense counsel opened the door to such testimony by asking Ramsuer the following question: "[I]f you had seen

who fired shots that might have killed Carlos Davis, there's no reason for you not to have said that, was there?" Tr., Vol. II, p. 97. This question opened the door for the prosecutor to question Ramsuer regarding his reluctance to testify. Petitioner admits that "nothing damaging emerged on re-direct," but, nevertheless, argues that the prosecution's questions and reference to Ramsuer's reluctance to testify in closing argument prejudiced Petitioner because it implied that he had someone kill the witness Robert Richards and that Ramsuer feared the same would happen to him if he testified against Petitioner.

The Michigan Court of Appeals held that counsel's representation in this regard was not ineffective, stating, in pertinent part:

> By focusing on the detrimental effect of trial counsel's examination of Ramsuer, defendant overlooks the broader context that made counsel's questions reasonable trial strategy. Unless the jurors believed Ramsuer's claim that he unwittingly signed an inaccurate statement, they likely would have concluded that Ramsuer either lied to police or lied at trial, and wondered about his motives for lying. Trial counsel's cross-examination ostensibly sought to show that Ramsuer was being truthful at trial, because he had no motive to conceal knowledge that would bring his friend's murderer to justice. This question opened the door to the prosecutor raising fear as Ramsuer's motive to lie at trial, but the jury likely would have considered this possibility anyway. Under these circumstances, trial counsel's cross-examination of Ramsuer was not objectively unreasonable, but rather a reasonable attempt to reap the benefits of Ramsuer's unanticipated testimony.

Johnson, slip op. at 8.

The Court finds that the court of appeals analysis was not contrary to or an unreasonable application of Strickland. As the state court observed, even absent defense counsel's question, the jury would have wondered why Ramsuer's testimony changed. Defense counsel's question gave Ramsuer an opportunity to tout the truthfulness of his trial testimony rather than his preliminary examination testimony. Defense counsel's attempt to put a positive spin on a

damaging witness was not ineffective.

**4.**

Petitioner next argues that his trial attorney was ineffective in failing to object to various instances of prosecutorial misconduct. This Court has determined that Petitioner has not shown that the prosecutor engaged in misconduct. Therefore, his attorney was not ineffective in failing to object to the prosecutor's conduct.

**5.**

Finally, Petitioner argues that counsel was ineffective in failing to call an exculpatory witness, Jason Hodgson.

The Michigan Court of Appeals held that the failure to call Hodgson did not prejudice the defense, reasoning, in pertinent part:

> Hodgson told the police that he was driving past the hall when the shooting started, and that he saw a man in a silver jacket scream, "That's my sister," and then shoot at the crowd. Hodgson admitted that he did not get a good look at the man's face. Defendant argues that Hodgson's testimony would have exculpated him because he does not have sister and because Hodgson's description of the shooter's clothes did not match what defendant wore in the party photographs.
>
> Hodgson's statement is not sufficient to establish that trial counsel erred in failing to call him. The statement does not necessarily exculpate defendant because there was evidence of two shooters outside the hall. Detective Timothy Ketvertis, a police firearms examiner, determined that spent casings found at the scene were fired by two different guns. Moreover, defendant failed to submit any additional offer of proof, such as an affidavit from Hodgson, to establish that Hodgson was wiling and able to testify at trial consistent with his statement. Consequently, he has failed to dhow either that trial counsel erred in failing to call Hodgson, or that an evidentiary hearing was necessary to further explore that possibility.

Johnson, slip op. at 8.

Given that some evidence was presented of two shooters and that Richards identified Petitioner as the shooter, Petitioner has failed to show that the state court's conclusion was

contrary to or an unreasonable application of Strickland. Moreover, given the testimony of Richards and Ramsuer's statement to police, Petitioner has failed to show a reasonable probability that the result of the proceeding would have been different had Hodgson been called as a witness.

### E.  Identification Procedure

Petitioner next argues that his right to due process was violated because the pretrial identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377 (1968). The identification at issue is that made by Robert Richards, the witness who was killed prior to trial. The trial court granted a motion for evidentiary hearing on this issue, but Richards was killed prior to the scheduled hearing.

"A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Ledbetter v. Edwards, 35 F.3d 1062, 1070 (6th Cir. 1994). A court must undertake a two-step analysis to determine the validity of a pretrial identification. First, the court must determine whether the procedure was unduly suggestive. If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable." Id. Where an in-court identification was potentially impacted by an impermissibly suggestive out-of-court lineup, the governing test is whether "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Neil v. Biggers, 409 U.S. 188, 199

(1972).

Police Detective Szymanski obtained photographs of people taken at the party. On March 3, 2002, Detective Szymanski took the photographs to the hospitalized gunshot victims, Mathis and Lewis. After visiting his friend, Lewis, in the hospital, Robert Richards contacted Detective Szymanski and gave him a description of the clothing worn by the shooter. Richards subsequently went to the police station and viewed a group photograph containing men and women. He identified Petitioner as the shooter. Petitioner argues that, because the clothing worn by Petitioner in the photograph was similar to that described by Richards in his telephone call with Szymanski, the Detective should have added other photographs to the array containing men whose facial characteristics matched those of Petitioner. Petitioner maintains that the procedure used was equivalent to a one-man lineup.

The Michigan Court of Appeals denied Petitioner's claims, stating, in pertinent part:

By showing Richards the photographs, the police did nothing to single out defendant, or to suggest to Richards that defendant was a suspect. The procedure is not analogous to the typical lineup situation where the police arrest a suspect, and place him in a lineup to test whether the witness can identify him. Unlike lineups and photographic arrays, which are composed and organized by the police, the photographs here were taken without any police involvement, for purposes unrelated to a criminal investigation.

The use of the photographs was more akin to an on-the-scene identification, in which the police detain a suspect shortly after the crime and ask a witness if they have detained the correct person.

* * *

. . . The police used the photographs to determine which person from a large pool of potential suspects was the shooter. The photographs enabled them to do so with a reasonable likelihood of reliability and, as a practical matter, was no different than asking a witness to point out the perpetrator in a crowd. Indeed, the photographs here were less suggestive than an on-the-scene identification, where the witness views a single suspect in police custody.

25

Defendant claims that the procedure was unfair and unreliable, and the "equivalent of a one-man line-up," because he was the only person in the photographs wearing clothes that matched Richards' description. We disagree. Richards' reliance on the shooter's clothing did not render his identification unreliable. The shooting occurred as the partygoers were quickly leaving the hall, so clothing would serve as a reliable identifying characteristic. If, as defendant contends, his clothes were distinctive, then Richards' reliance on the clothes actually made his identification more, not less reliable. Defendant's attempt to compare the photographic identification to a lineup in which the suspect has been dressed to stand out, and match the witness' prior description, does not comport with either the facts of this case or the applicable law. We therefore find no error in the admission of Richards' identification, and no need to pursue the matter further at an evidentiary hearing.

Johnson, slip op. at 9-10.

The Court finds the Michigan Court of Appeals' analogy to an on-the-scene identification helpful. The Sixth Circuit Court of Appeals has recognized the value of show-up procedures, finding that conducting a showup is "consistent with legitimate law enforcement purposes," including allowing identification before a suspect has had the opportunity to alter his appearance. Drew v. Parker, 244 Fed. App'x 23, 28 (6th Cir. 2007). The Court concludes that the state court's determination that the identification procedure was not impermissibly suggestive was not contrary to or an unreasonable application of Supreme Court precedent.

Moreover, even assuming that the identification procedure was impermissibly suggestive, Petitioner has failed to show the identification at the preliminary examination was not reliable. Richards testified that he had the opportunity to see the shooter from twenty feet away, and that, although it was dark outside, the lighting was sufficient for him to discern many details of the shooter's clothing, including the color of his hat and type of shoes he wore. Considering all of these factors, this Court concludes that the state court's determination that the identification was reliable was not contrary to or an unreasonable application of Supreme Court precedent.

In addition, there is no constitutional right to counsel at a photographic array. <u>Van v. Jones</u>, 475 F.3d 292, 311 (6th Cir. 2007); <u>United States v. Ash</u>, 413 U.S. 300 (1973), . Therefore, Petitioner fails to assert a constitutional violation with respect to this claim.

## F. Sentencing Claim

Finally, Petitioner argues that he is entitled to habeas corpus relief because the trial court increased his sentence in reliance upon facts not found by a jury in violation of the Sixth and Fourteenth Amendments. *See* <u>Blakely v. Washington</u>, 543 U.S. 296, 303-05 (2004) (state trial court's action in sentencing defendant beyond the statutory maximum of the standard range for his offense based upon judicial finding of deliberate cruelty violated Sixth Amendment right to trial by jury).

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u> at 490. Michigan has an indeterminate sentencing system for most crimes, including causing the death of another person while operating a motor vehicle under the influence of intoxicants. The maximum term of imprisonment is set by law. Mich. Comp. Laws § 769.8(1); *see also* <u>People v. Drohan</u>, 475 Mich. 140, 160-61 (2006). In <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the Supreme Court addressed indeterminate sentencing systems and held that such systems do not violate the Sixth Amendment. The Court explained:

> [The Sixth Amendment] limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems

important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is entitled to no more than a 10-year sentence-and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

Blakely, 542 U.S. at 308-09.

Judicial factfinding may not be used to impose a sentence "beyond the prescribed statutory maximum." Apprendi, 530 U.S. at 490. Under Michigan law, the statutory maximum for second-degree murder, Mich. Comp. Laws § 750.317, and assault with intent to commit murder, Mich. Comp. Laws § 750.83, is life imprisonment. The sentencing court did not impose a sentence beyond the statutory maximum. Therefore, the sentencing scheme did not run afoul of the Sixth Amendment. Because Blakely does not apply to indeterminate sentencing schemes like the one utilized in Michigan, the trial court's sentence did not violate Petitioner's constitutional rights. See Tironi v. Birkett, No. 06-1557, 2007 WL 3226198, * 1 (6th Cir. Oct. 26, 2007). ("Blakely does not apply to Michigan's indeterminate sentencing scheme."). Minner v. Vasbinder, 2007 WL 1469419, * 4 (E.D. Mich. May 21, 2007); Chatman v. Lafler, 2007 WL 1308677, *2 (E.D. Mich. May 3, 2007); Jones v. Bergh, 2006 WL 1007602, *1-2 (E.D. Mich. April 17, 2006); George v. Burt, 2006 WL 156396, *5 (E.D. Mich. Jan. 20, 2006); Walton v. McKee, 2005 WL 1343060, *3 (E.D. Mich. June 1, 2005). Petitioner has thus failed to state a claim upon which habeas relief may be granted.

## VI. Conclusion

For the reasons stated, Petitioner has failed to show that she is incarcerated in violation of

the Constitution or laws of the United States.  Accordingly, **IT IS ORDERED** that the petition

for a writ of habeas corpus is **DENIED**.


       s/Bernard A. Friedman                     
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE




Dated:  February 12, 2008

I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

s/Carol Mullins
Case Manager to Chief Judge Friedman